**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NIELSEN CONSUMER LLC; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-CV-10946 |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CIRCANA, LLC; | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

1.     Plaintiff Nielsen Consumer LLC d/b/a NielsenIQ ("NielsenIQ"), by and through its attorneys, hereby submit its Complaint against Defendant Circana, LLC ("Circana") for infringement of the LABEL INSIGHT Mark, misappropriation of the highly-proprietary and valuable Label Insight Trade Secret Information, and other acts of unlawful competition and breach of contract, which have caused (and continue to cause) NielsenIQ significant damages and irreparable harm for which there is no remedy at law. In further support, NielsenIQ states as follows.

## Nature of Action

2.     Consumers are no longer shopping primarily based on brand, flavor, or price. They are instead making purchasing decisions based on specific attributes of the products. For example, shoppers are now seeking out sustainability-minded companies, "clean-label" products, and products that fit the particular lifestyle they lead (*e.g.*, gluten free, keto, pescatarian, etc.). From keto-friendly snacks and gluten-free beer, to biodegradable shampoos and paraben-free makeup, the shopping experience is now more personalized than ever.

3.     Yet many companies continue to fail to claim and/or promote at least one of the most-searched attributes of their product(s), which means they are missing out on potential sales

and leaving money on the table. Therefore, by obtaining data on what attributes customers are looking for and value, retailers and manufacturers can improve product discoverability, deliver experiences that meet shoppers' needs, and maximize revenue by identifying emerging trends and capitalizing on those trends. That is where the Label Insight product, and its related services, comes in. Label Insight provides retailers and manufacturers with insight into the "why" behind the consumers' "buy."

4.     Label Insight is a data-driven technology platform and service—originally developed and owned by Label Insight, Inc. in St. Louis, Missouri—that specializes in collecting, analyzing, and categorizing product data and attributes from food labels and other consumer-packaged goods ("CPGs"). Label Insight uses machine learning and data science to then analyze the data—creating detailed product profiles that go well beyond what is typically available on a standard product label. In 2021, Label Insight, Inc., and all of its assets and rights, was acquired by NielsenIQ, a global leader in data analytics, to further enhance product transparency solutions within the retail and consumer packaged goods sectors. The acquisition helped expand Label Insight's reach by integrating it with NielsenIQ's global data network.

5.     Label Insight now provides the industry's most granular and enriched product attributes, with over 27,000 attributes per product that go far beyond the label and 99% coverage of consumer queries related to those products. And has become the industry's most trusted source of product attribute data and the largest product metadata platform globally. This data helps retailers and consumers identify, among other things, how many consumers are searching for a particular attribute, how many products in the market fail to claim that attribute, the total annual sales related to that attribute, and the percentage of sales growth from the prior year, as shown by the example below.

## Label Insight + NielsenIQ Provides 360 Degree Insight
### Food & Beverage

| 2.9M Annual Searches | 899K Annual Searches | 6.7M Annual Searches | 379K Annual Searches | 38K Annual Searches |
|---|---|---|---|---|
| 61K Unclaimed Products | 127K Unclaimed Products | 88K Unclaimed Products | 138K Unclaimed Products | 238K Unclaimed Products |
| $69.94B Dollar Sales | $88.58B Dollar Sales | $77.96B Dollar Sales | $163.46B Dollar Sales | $248.33B Dollar Sales |
| KETO Ketogenic | Low Sodium | V Vegan | No Added Sugar | Soy Free |
| 7.0% Dollar Growth | 6.1% Dollar Growth | 5.9% Dollar Growth | 6.1% Dollar Growth | 6.0% Dollar Growth |

6. The highly-proprietary and valuable Label Insight platform and services described above, and further below, have been used continuously in connection with the LABEL INSIGHT trademark since at least as early as 2015. Beyond its common law trademark rights in the LABEL INSIGHT trademark, NielsenIQ also owns, through its acquisition of Label Insight, Inc., a federal registration from the United States Patent and Trademark Office ("USPTO") for **LABELINSIGHT** (Reg. No. 5055429) in connection with *"[p]roviding product data collection and management services for use in food product label analysis and marketing; providing product data solutions and analytics, namely, analyzing and compiling collected business data for food product labeling; business data analysis, namely, providing product data for analysis for food product label marketing and sales"* (IC 035) (the "Registered LABEL INSIGHT Mark"). *See* Exhibit 1 (copy of the Certificate of Registration for Reg. No. 5055429). NielsenIQ's common-law and registered trademark rights in the LABEL INSIGHT trademark collectively referred to herein as "LABEL INSIGHT Mark".

7.     Retailers and manufacturers throughout the CPG industry have come to associate the LABEL INSIGHT Mark with the highly-reliable and valuable data provided through the Label Insight services and platform—providing tremendous value to NielsenIQ and embodying the significant goodwill of the company.

8.     Recently, NielsenIQ discovered that LiveRamp Holdings, Inc. and LiveRamp, Inc. (collectively "LiveRamp") are offering CPG attribute data and analytics purportedly acquired from Circana (fka IRI + NPD) in connection with the LABEL INSIGHT Mark, including, but not necessarily limited to, as shown below.



9.     NielsenIQ has never provided LiveRamp with authorization to use the LABEL INSIGHT Mark or its highly-proprietary data related to CPG attributes. And Circana is not authorized to use, disclose, market, or sell any Label Insight data, or data purportedly powered by Label Insight, including, without limitation, to LiveRamp, or to use the LABEL INSIGHT Mark in connection with competing CPG product/label data and analytic services, and related goods/services.

10.     On information and belief, LiveRamp is a data connectivity platform that provides tools for managing and connecting customer data across various marketing and advertising

ecosystems. On information and belief, LiveRamp therefore serves as a hub for data connectivity, offering services that allow brands, publishers, and agencies to connect their first-party data with third-party data sources and activate it across various channels and platforms.

11.     According to LiveRamp's website (https://liveramp.com/customer-stories/circana-testimonial/), Circana and LiveRamp collaborate to make Circana's deterministic data available within LiveRamp's data platform to ensure customers can obtain the breadth and depth of retailer transaction data that they value. This collaboration expanded, on information and belief, in 2023 (https://www.circana.com/intelligence/press-releases/2023/circana-partners-with-snowflake-and-liveramp-to-support-seamless-and-private-data-collaboration-for-advertisers/) to provide greater access to Circana's first-party purchase-based data for CPG categories and directly distribute audience segments created using Circana data.

12.     Essentially, LiveRamp offers products and/or data from third-party data companies, such as Circana, and then pays that third-party data company for use of their data. Therefore, on information and belief, the data offered by LiveRamp under "**IRI Attribute Audiences Powered by Label Insight**," as shown above, is marketed, advertised, promoted and sold by Circana to, at the very least, LiveRamp in connection with the LABEL INSIGHT Mark and, on information and belief, using the Label Insight Trade Secret Information. Circana does not have authorization or consent to use the LABEL INSIGHT Mark or the Label Insight Trade Secret Information.

13.     Circana's unauthorized use of the LABEL INSIGHT Mark in connection with the sale of its services to consumers, including, without limitation, LiveRamp, trades off the goodwill built in the LABEL INSIGHT Mark since at least as early as 2015, knowingly infringes NielsenIQ's well-established and indisputable rights in the LABEL INSIGHT Mark, and presents a significant threat to the public's interest in not being confused when making purchasing

decisions. And by purportedly selling Label Insight data in connection with the LABEL INSIGHT Mark, Circana has also, on information and belief, misappropriated NielsenIQ's trade secrets by disclosing and/or using its trade secrets without express or implied consent while, at the time of the disclosure or use, knowing or having reason to know, at the very least, that knowledge of the trade secret was derived under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret, or was derived from or through a party who owed a duty to NielsenIQ to maintain the secrecy of the trade secret or limit the use of the trade secret.

14. Therefore, through this Complaint, NielsenIQ seeks to protect its rights in the LABEL INSIGHT Mark and its Label Insight Trade Secret Information by, among other things, obtaining injunctive relief and damages, in an amount to be specifically determined at trial, for Circana's unfair competition and infringement of the LABEL INSIGHT Mark in violation of the Lanham Act (15 U.S.C. § 1114 and 1125) and state infringement/unfair competition laws, misappropriation of NielsenIQ's trade secrets in violation of the Defend Trade Secrets Act (18 U.S.C. § 1831 et seq.) ("DTSA") and state misappropriation laws, as well as breach of the Master Services Agreement.

**The Parties**

15. Plaintiff Nielsen Consumer LLC ("NielsenIQ") is a Delaware limited liability company with a principal place of business at 200 W. Jackson Blvd., Chicago, IL 60606. NielsenIQ acquired Label Insight, Inc., along with all of its assets and rights, in May 2021. In August 2021, Label Insight, Inc. merged with and into NielsenIQ, with NielsenIQ surviving such merger.

16. On information and belief, Defendant Circana, LLC is a Delaware limited liability company with a principal place of business at 203 North LaSalle Street, Chicago, IL 60601 and has marketed, advertised, promoted and sold goods and/or services in Illinois in connection with

the LABEL INSIGHT Mark and using the Label Insight Trade Secret Information. On information and belief, Circana, LLC is the successor in interest to Circana, Inc. and Information Resources, Inc. as a result of legal restructuring and name changes and, therefore, is subject, by operation of law, agreement, or otherwise, to all assets, rights, liabilities and obligations of Circana, Inc. and Information Resources, Inc. Specifically, Information Resources, Inc. legally changed its name to Circana, Inc. in 2023 and then Circana, Inc. was converted to Circana, LLC subsequently the same year. Unless specified herein, the term Circana shall relate to actions taken by Circana, LLC and/or its predecessor entities Circana, Inc. and Information Resources, Inc.

## **Jurisdiction and Venue**

17.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 pursuant to NielsenIQ's allegations of trademark infringement under the Lanham Act (15 U.S.C. §§ 1114 and 1125) and trade secret misappropriation under the federal Defend Trade Secrets Act (18 U.S.C. § 1831 et seq.).  This Court also has supplemental jurisdiction over NielsenIQ's state law and common law claims pursuant to 28 U.S.C. § 1367(a) because they are so substantially related and share a common nucleus of operative facts with NielsenIQ's federal claims as to form part of the same case or controversy.

18.     This Court has personal jurisdiction over Circana, and such an assertion is in accordance with the Due Process clause of the Fourteenth Amendment of the United States Constitution, because it is headquartered in Illinois at 203 North LaSalle Street, Chicago, IL 60601 and has committed tortious acts in Illinois giving rise to and/or related to the claims asserted herein, including, without limitation, and on information and belief, its unauthorized use of the LABEL INSIGHT Mark in connection with the sale of CPG data and information in Illinois and its unauthorized disclosure and/or use of Label Insight Trade Secret Information in Illinois.

Furthermore, through the Master Services Agreement, as further described below, Circana irrevocably submitted to personal jurisdiction in the courts located in Chicago, Illinois.

19.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because, on information and belief, a substantial part of the events or omissions giving rise to the claims asserted in the Complaint occurred in this judicial district, including, without limitation, the fact that Circana is headquartered in this judicial district and therefore conducted its unauthorized use of the LABEL INSIGHT Mark in connection with the sale of CPG data and information in this judicial district and, on information and belief, disclosed and/or used the Label Insight Trade Secret Information in this judicial district, and a substantial part of the property that is the subject of this action is situated in this judicial district. Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(1) because, on information and belief, the defendant resides in Illinois. Finally, through the Master Services Agreement, as further described below, Circana irrevocably submitted to venue in the courts located in Chicago, Illinois.

## Facts Common to All Counts

### I.     Label Insight Business, Trademark Rights, and Trade Secret Information

20.     Label Insight, a product and service offered and sold by NielsenIQ, provides CPG manufacturers and retailers with data and tools that help them understand consumer behavior in their markets and use that knowledge to grow their business. In doing so, Label Insight provides retailers and manufacturers with insight into the "why" behind consumers' "buy."

21.     Label Insight is a data-driven technology platform and service that specializes in collecting, analyzing, and categorizing product data and attributes from food labels and other consumer-packaged goods ("CPGs"). CPGs are products that consumers frequently use and replenish, including, for example, grocery items (*e.g.*, produce, meat, seafood, dairy, etc.),

household care items, pet supplies, and health or beauty items. Label Insight uses machine learning and data science to then analyze the data—creating detailed product profiles that go beyond what's typically available on a standard product label.

22.     This information is then compiled, sorted, and coded to provide invaluable insight for CPG retailers and manufacturers throughout the world. This data helps such retailers and manufacturers improve product discoverability, deliver experiences that meet shoppers' particular needs, and maximize revenue by identifying emerging trends and then capitalizing on those trends.

23.     Label Insight has become the industry's most trusted source of product attribute data for CPGs and the largest product metadata platform globally. With a market-leading database of over 200,000 product nutrients, 400,000 product ingredients, and 9 million product claims, Label Insight's premier product metadata platform—which spans numerous consumer product preferences, such as sustainably sourced, free from specific allergens or ingredients, keto friendly, low sugar, cruelty free, etc.—enables brands and retailers help shoppers find the products that meet their individual health, wellness, and lifestyle needs.

24.     The confidentiality and secrecy of the aggregated data compiled, sorted, and coded by NielsenIQ, and formerly Label Insight, Inc., and offered through the Label Insight platform, provides it with significant independent economic and competitive value. In fact, in 2020, Label Insight was named to the CB Insights 2020 Retail Tech 100, as one of the world's most innovative B2B retail technology companies.

25.     In May 2021, Label Insight, Inc. was acquired by NielsenIQ, a global leader in data analytics, to further enhance product transparency solutions within the retail and consumer packaged goods sectors. NielsenIQ is the leader in providing the most complete, unbiased view of consumer behavior, globally. Powered by a ground-breaking consumer data platform and fueled

by rich analytic capabilities, NielsenIQ enables bold, confident decision-making for the world's leading consumer goods companies and retailers.

26. The acquisition in 2021 helped pair Label Insight's significant wealth of product attribution data with NielsenIQ's gold-standard, global retail measurement system ("RMS") sales data and panel insights in order to further expand Label Insight's reach and, in turn, the value and insight offered to CPG retailers and manufacturers.

27. NielsenIQ's Label Insight platform and services now provide the industry's most granular and enriched product attributes, with over 27,000 attributes per product that go far beyond the label and 99% coverage of consumer queries related to those products. This data helps retailers and manufactures identify, among other things, how many consumers are searching for a particular attribute, how many products in the market fail to claim that attribute, the total annual sales related to that attribute, and the percentage of sales growth related to that attribute from the prior year, as shown by the examples below. These tailored Label Insight solutions enable retailers and manufacturers to then thrive amid rapidly changing consumer preferences, digital disruption and new competitors.

### Label Insight + NielsenIQ Provides 360 Degree Insight
#### Food & Beverage

| 2.9M | 899K | 6.7M | 379K | 38K |
| Annual Searches | Annual Searches | Annual Searches | Annual Searches | Annual Searches |
| 61K | 127K | 88K | 138K | 238K |
| Unclaimed Products | Unclaimed Products | Unclaimed Products | Unclaimed Products | Unclaimed Products |
| $69.94B | $88.58B | $77.96B | $163.46B | $248.33B |
| Dollar Sales | Dollar Sales | Dollar Sales | Dollar Sales | Dollar Sales |
| Ketogenic | Low Sodium | Vegan | No Added Sugar | Soy Free |
| 7.0% | 6.1% | 5.9% | 6.1% | 6.0% |
| Dollar Growth | Dollar Growth | Dollar Growth | Dollar Growth | Dollar Growth |

28. Therefore, the confidential and proprietary information compiled, sorted and coded as part of the Label Insight services, particularly the breadth of data and information compiled by Label Insight, is extremely sensitive and valuable in the consumer data industry and is precisely how Label Insight differentiates itself from competitors. NielsenIQ is not aware of any competitor in the CPG data industry that covers the same breadth of CPG label data, information and insight as provided through the Label Insight proprietary offering.

29. Therefore, the confidentiality and secrecy of the detailed and robust Label Insight data provides NielsenIQ with a significant competitive advantage in the industry. This is, in part, because data assessment and analysis can only be as good as the data collected. If the data has gaps, inaccuracies, biases, or is not large enough to read trends from, analyzing and commercializing the data is of limited value. NielsenIQ is uniquely positioned to address those issues given its preexisting expertise and robust Label Insight data.

30. NielsenIQ regards the Label Insight Trade Secret Information, as further described and defined below, as well as the general know-how related to the collection and use of certain components of the Label Insight data, as highly confidential, proprietary, and trade secret, and carefully protects this material and know-how, as further described below.

31. The Label Insight Trade Secret Information is of immense value to NielsenIQ's business, is the result of substantial investment and effort by NielsenIQ, and formerly Label Insight, Inc., and forms the foundation for Label Insight having a competitive advantage in the CPG data and analytics industry. This is among the most confidential, proprietary, and trade secret information in the consumer data industry.

32. The Label Insight Trade Secret Information derives independent economic value from not being generally known, and not being readily ascertainable through proper means by

another person who could obtain economic value from the acquisition, disclosure, or use of the information because industry competitors differentiate themselves by offering unique data products and services—which depends on the collection of unique data and information that is proprietary and confidential to each industry competitor.

33.     NielsenIQ takes reasonable steps to protect the confidentiality and secrecy of the Label Insight Trade Secret Information and independent economic value derived therefrom. By way of example, but not an exhaustive list, NielsenIQ restricts access to the Label Insight Trade Secret Information to personnel on a need-to-know basis, keeps highly sensitive information in a secure location, and stores confidential information on secured and password-protected computer systems. NielsenIQ also requires its employees to execute non-disclosure agreements as a prerequisite to employment and their receipt of the Label Insight Trade Secret Information.  On information and belief, Label Insight, Inc, prior to its acquisition in 2021, took similarly reasonable steps to protect the confidentiality and secrecy of the Label Insight Trade Secret Information and independent economic value derived therefrom.

34.     For any of the Label Insight Trade Secret Information licensed to a third party, NielsenIQ requires the third party to contractually agree to maintain the confidentiality and secrecy of the Label Insight Trade Secret Information and limit its use of such information.

35.     The Label Insight Trade Secret Information is not susceptible to reverse engineering and is not, as a result of NielsenIQ's, and formerly Label Insight, Inc.'s, reasonable efforts to maintain its secrecy, publicly available or widely known in the industry. As a result, the Label Insight Trade Secret Information derives independent economic value from not being generally known to, and not readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

36. Circana acknowledged as much through the Master Services Agreement by, as further discussed below, agreeing that the Label Insight Trade Secret Information was the confidential information of Label Insight, Inc., and that Label Insight, Inc. owns all intellectual property rights related to that information.

37. The LABEL INSIGHT Mark has been used continuously in connection with the highly-proprietary and valuable Label Insight platform and services described above since at least as early as 2015. As a result of its longstanding use, and the substantial money spent in marketing and advertising throughout the years in connection with the LABEL INSIGHT Mark, the LABEL INSIGHT Mark has come to serve as symbol and assurance of NielsenIQ and Label Insight's quality, reputation, and goodwill.

38. To further protect its common law trademark rights in the LABEL INSIGHT Mark, NielsenIQ also owns, through its acquisition of Label Insight, Inc., a federal trademark registration from the United States Patent and Trademark Office for LABEL**INSIGHT** (Reg. No. 5055429) in connection with *"[p]roviding product data collection and management services for use in food product label analysis and marketing; providing product data solutions and analytics, namely, analyzing and compiling collected business data for food product labeling; business data analysis, namely, providing product data for analysis for food product label marketing and sales"* (IC 035) ("Registered LABEL INSIGHT Mark"). *See* Exhibit 1 (Reg. No. 5055429). The Label Insight registration is valid, subsisting, unrevoked, and has not been cancelled.

39. Pursuant to 15 U.S.C. §§ 1115 and 1057, the federal registration for the Registered LABEL INSIGHT Mark is *prima facie* evidence of the validity of the Registered LABEL INSIGHT Mark, as well as NielsenIQ's ownership and exclusive right to use said mark in connection with the goods and services identified in the registration certificate, namely, *product*

*data collection and management services for use in food product label analysis and marketing; providing product data solutions and analytics, namely, analyzing and compiling collected business data for food product labeling; business data analysis, namely, providing product data for analysis for food product label marketing and sales.*

40.     Through the merger on August 30, 2021, NielsenIQ acquired all right title and interest in and to the U.S. Trademark Registration No. 5,055,429, as well as all common law trademark rights in the LABEL INSIGHT Mark, together with the goodwill of the Label Insight, Inc. business connected with and symbolized by the LABEL INSIGHT Mark. *See* Exhibit 2.

41.     Through extensive advertising and promotion, as well as the exceptional and reliable services offered in connection with the LABEL INSIGHT Mark since at least as early as 2015, the LABEL INSIGHT Mark has earned substantial fame and considerable goodwill among the public and is a critical factor to NielsenIQ's business success in the competitive market of CPG data and insight.

42.     In short, the LABEL INSIGHT Mark is a distinctive asset of immeasurable value and identifier of genuine Label Insight goods and services. The goodwill symbolized by the LABEL INSIGHT Mark belongs exclusively to NielsenIQ and dates back to at least as early as 2015, long before Circana began its unauthorized use of marks identical or substantially similar to the LABEL INSIGHT Mark.

**II.     Circana's Relationship with Label Insight, Inc (and subsequently NielsenIQ), its Contractual Obligations under the Master Services Agreement, and Access to Label Insight Trade Secret Information.**

43.     Circana is one of NielsenIQ's primary competitors in the CPG data and analytics industry and provides numerous competing services, including, without limitation, data and

analytic platforms and services related to CPG label data, insights, and attributes that compete with the Label Insight product offering.

44.     Prior to NielsenIQ's acquisition of Label Insight, Inc. in 2021, Circana, through its predecessor entity, Information Resources, Inc., entered into a Master Services Agreement with Label Insight, Inc. to acquire, among other things, label, ingredient, allergen, attribute, nutrient value certification information and other data and images compiled and analyzed by Label Insight, Inc., as well as further proprietary derived attributes and views of such product data—collectively defined under the Master Services Agreement as "LI Materials" and referred to herein as "Label Insight Materials." *See* Exhibit 3 (Master Services Agreement).

45.     Essentially, through the Master Services Agreement, Circana was provided with access to Label Insight, Inc.'s foundational product attribute data that was then used, on information and belief, by Circana to provide manufactures and retailers with insight when paired with Circana's consumer and/or sales data.

46.     The data and information provided to Circana under the Master Services Agreement, including, without limitation, the Label Insight Materials, as further defined and described in Exhibit A and Appendix 1 to the Master Services Agreement (Exhibit 3), as well as the general know-how related to the collection and use of the Label Insight Materials provided under the Master Services Agreement, is collectively referred to herein as "Label Insight Trade Secret Information."

47.     Through the Master Services Agreement, Circana acknowledged that Label Insight, Inc. owned any and all intellectual property rights in, related to or otherwise concerning the Label Insight Materials provided under the Master Services Agreement and that it would not make any derivatives on top of or with respect to such Label Insight Materials. *See* Exhibit 3 at ¶ 4.

48.     Since the effective date of July 1, 2020, and under the protections of the Master Services Agreement, Circana was provided with access to the Label Insight Trade Secret Information. Specifically, Label Insight, Inc., and later NielsenIQ, provided Circana with non-exclusive access to the Label Insight SaaS platform—defined in the Master Services Agreement as "LI SaaS Platform" and referred to herein as "Label Insight SaaS Platform"—which provided, at the very least, all readily available attributes developed and grouped according to the cases identified by Label Insight, Inc. as set forth in Appendix 1 of the Master Services Agreement and conventional label data and information as further set forth in Appendix 1. Label Insight, Inc., and subsequently NielsenIQ, also provided to Circana a CSV file export delivered through a secure FTP on a quad weekly cadence with respect to the Label Insight Materials by product type. *See* Exhibit 3 at Statement of Work ¶ 1-3.

49.     Through the Master Services Agreement, Circana acknowledged that the Label Insight Trade Secret Information provided under the Master Services Agreement is the confidential information of Label Insight, Inc. and further agreed that it shall not disclose or cause to be disclosed any Label Insight Trade Secret Information except to those who require access to such information to perform under the Master Services Agreement and to protect the Label Insight Trade Secret Information by using the same degree of care, but no less than a reasonable degree of care, that Circana uses to protect its own confidential information of a like nature to prevent its unauthorized use, dissemination or publication to any unauthorized third parties. *See* Exhibit 3 at ¶ 5.

50.     Circana was prohibited from (and required to ensure that its customers did not), unless expressly allowed under the Master Services Agreement the following uses: (i) copy, modify or create derivative works of the Label Insight SaaS Platform and/or the Label Insight

Materials; (ii) rent, lease, lend, sell, sublicense, assign, distribute, publish, transfer or otherwise make available the Label Insight SaaS Platform and/or any of the Label Insight Materials to any person or entity; (iii) reverse engineer, disassemble, decompile, decode, adapt or otherwise attempt to derive or gain access to the source code associated with the Label Insight SaaS Platform, in whole or in part; (iv) damage, destroy, disrupt, disable, impair, interfere with or otherwise impede or harm in any manner the Label Insight SaaS Platform, in whole or in part; (v) access or use the Label Insight SaaS Platform and/or the Label Insight Materials in any manner or for any purpose that infringes, misappropriates or otherwise violates any Intellectual Property Right or other right of any third party, or that violates any applicable law; and/or (vi) access or use the Label Insight SaaS Platform and/or the Label Insight Materials for purposes of competitive analysis of the Label Insight SaaS Platform or the Label Insight Materials. *See* Exhibit 3 at Statement of Work ¶ 5.2.

51.     The Master Services Agreement commenced on July 1, 2020 and was agreed to automatically expired on June 30, 2025 (the "***Term***").  *See* Exhibit 3 at ¶ 2. Each twelve-month period during the Term beginning on the Effective Date was referred as a "***Contract Year.***" *Id.* Either party was allowed to terminate the Master Services Agreement after completion of the third Contract Year upon one hundred eighty (180) days' prior written notice to the other party. *Id.*

52.     Upon termination of the Master Services Agreement, each party was required, upon the written request of the other party, to immediately return to the other or destroy any and all Confidential Information, as defined by the Master Services Agreement, of the other party; provided that (i) except as provided in the Statement of Work ("SOW"), all rights, licenses, consents and authorizations granted by Label Insight, Inc. to Circana, including Circana's use of the Label Insight SaaS Platform and Label Insight Materials in accordance with the Master Services Agreement and the SOW, would immediately terminate, and (ii) Circana shall

permanently delete all Label Insight Materials in its possession within seven (7) business days after the termination of the Agreement, except as necessary to fulfill Customer Contracts (as defined in the SOW), in each case such Label Insight Materials were to be deleted within seven (7) business days after the fulfillment of such Customer Contracts. *See* Exhibit 3 at ¶ 2. Termination of the Master Services Agreement terminated the parties' obligations to continue any further activities therein, provided that rights and obligations of the parties under Articles 2 and 4 – 8 of the Agreement and the restrictions set forth in the SOW, survived termination of the Master Services Agreement. *Id.*

53.     As a result, Circana was fully aware and had first-hand knowledge that its right to use the Label Insight Trade Secret Information acquired under the Master Services Agreement was significantly limited and certainly did not permit use of the Label Insight Trade Secret Information after termination of the Master Services Agreement unless expressly permitted therein. Circana has never requested permission, and neither Label Insight, Inc., on information and belief, nor NielsenIQ has ever consented, to any use of the Label Insight Trade Secret Information in any manner by Circana other than as expressly set forth in the Master Services Agreement.

54.     On information and belief, Circana was aware that Label Insight, Inc. would not have entered into the Master Services Agreement absent the specific use restrictions and exclusivity and confidentiality obligations put in place by the Master Services Agreement to protect the Label Insight Trade Secret Information and Circana's agreement to those obligations.

55.     The above-referenced provisions of the Master Services Agreement were narrowly tailored to protect Label Insight, Inc.'s, and subsequently NielsenIQ's, legitimate business interests and the need to maintain the secrecy and confidentiality of the Label Insight Trade Secret Information.

III.    **Nielsen's Acquisition of Label Insight, Inc. and Termination of the Master Services Agreement.**

56.    In 2021, Label Insight, Inc. was acquired by NielsenIQ, wherein NielsenIQ acquired all assets and rights owned by Label Insight, Inc, including, without limitation, all rights under the Maters Services Agreement and all rights to the Label Insight Trade Secret Information and LABEL INSIGHT Mark. Between 2021 and December 2022, NielsenIQ and Circana continued under the Master Services Agreement in the same manner as had been performed since its effective date on July 1, 2020.

57.    However, pursuant to its rights under the Master Services Agreement, NielsenIQ sent Circana a notice of "Termination of the Master Services Agreement" on December 29, 2022, to become effective on June 30, 2023 (*i.e.,* completion of the third Contract Year). *See* Exhibit 4 ("Termination Notice").

58.    Pursuant to the Termination Notice, NielsenIQ explicitly stated that effective upon termination, all obligations of the parties to continue further activities will cease, and that Circana must comply with the requirement to cease all use of the Label Insight SaaS Platform and Label Insight Materials and permanently delete all Label Insight Materials in its possession. *See id*.

59.    After termination of the Master Services Agreement on June 30, 2023, Circana ceased all payments of fees and/or royalties under the Master Services Agreement and NielsenIQ promptly terminated Circana's access to the Label Insight SaaS Platform. Therefore, NielsenIQ believed, in good faith, that Circana was complying with the limitations and obligations set forth in the Master Services Agreement and was not using the Label Insight Trade Secret Information in an impermissible manner. That belief, as recently discovery, was, on information and belief, misplaced.

#### IV.    Willful Infringement of the LABEL INSIGHT Mark, Unlawful Competition, and Misappropriation of the Label Insight Trade Secret Information.

60.    As the principal competitor of NielsenIQ in the United States with respect to providing retail/product data and analytics to CPG manufacturers and retailers, Circana and NielsenIQ both provide similar, while at times different, services to the CPG industry. Circana and NielsenIQ also have many common customers, as it is not unusual for CPG manufacturers and/or retailers to license both parties' products and solutions for its particular needs.

61.    NielsenIQ recently learned that LiveRamp is currently offering, through its online "store," data and attributes under the category "Circana Audiences" that are purportedly "***Powered By Label Insight,***" as shown below.

| Row Labels | # of Segments | % of segments | Average of Digital Ad Targeting Price (CPM) | Average of TV Targeting Price (CPM) | Average of Cost Per Click | Average of Programmatic % of Media | Average of CPM Cap | Average of Advertiser Direct % of Media |
|---|---|---|---|---|---|---|---|---|
| ⊞ Allergan | 3 | 0.04% | $1.25 | $1.75 | $1.25 | | | 10 |
| ⊞ Gran Coramino | 1 | 0.01% | $0.95 | $0.95 | | 15 | | 15 |
| ⊞ Hershey | 15 | 0.22% | $1.00 | $1.00 | $1.00 | 40 | $5.00 | 15 |
| ⊞ Hershey's | 1 | 0.01% | $0.99 | $1.99 | $0.99 | 40 | $5.00 | 15 |
| ⊟ IRI Attribute Audiences Powered By Label Insight | 1 | 0.01% | $1.25 | $2.75 | $1.25 | | | 10 |
| ⊟ IRI Attribute Audiences Powered By Label Insight > Organic Food Buyers | 1 | 0.01% | $1.25 | $2.75 | $1.25 | | | 10 |
| ⊟ IRI + NPD are now Circana | 1 | 0.01% | $1.25 | $2.75 | $1.25 | | | 10 |
| Organic Food Buyers: Top 70% of HHs buying organic labeled products as tracked by Label Insight within Edible | 1 | 0.01% | $1.25 | $2.75 | $1.25 | | | 10 |
| IRI Circana ProScores | 1891 | 27.84% | $0.95 | $2.00 | $0.95 | 40 | $3.00 | 10 |
| IRI NPD Circana ProScores | 1225 | 18.03% | $1.15 | $2.15 | $1.15 | 40 | $3.00 | 15 |
| IRI ProScores CPG Audiences | 3022 | 44.49% | $0.89 | $1.97 | $0.89 | 41 | $5.83 | 10 |
| IRI Retailer ProScores | 141 | 2.08% | $0.95 | $2.00 | $0.95 | 40 | $6.00 | 10 |
| IRI Verified CPG Audiences | 82 | 1.21% | $1.25 | $2.75 | $1.25 | 40 | $7.00 | 10 |
| Optimized for TV | 400 | 5.89% | $1.50 | $1.50 | | | | 10 |
| ⊞ Price Sensitivity Segmentation | 4 | 0.06% | $0.95 | $2.00 | $0.95 | 40 | $7.00 | 10 |
| ⊞ Proscores | 7 | 0.10% | $0.95 | $2.00 | $0.95 | | | 10 |
| Grand Total | 6793 | 100.00% | $0.99 | $1.99 | $0.96 | 40 | $3.22 | 11 |

62.    On information and belief, the data and attributes made available for purchase by LiveRamp under "**IRI Attribute Audiences Powered by Label Insight**" are marketed and sold to LiveRamp by Circana in connection with the LABEL INSIGHT Mark. This belief is further supported by the fact that the "Circana Audiences" information indicates that "IRI + NPD are now Circana," which did not occur until, on information and belief, the end of 2023.

63.    Since termination of the Master Services Agreement on June 30, 2023, Circana was contractually obligated to, at the very least, cease all use of the Label Insight Trade Secret Information and delete all Label Insight Trade Secret Information in its possession. However, on

information and belief, Circana never deleted the Label Insight Trade Secret Information received under the Master Services Agreement and continues to offer and sell that Label Insight Trade Secret Information in connection with the LABEL INSIGHT Mark, including, without limitation, to LiveRamp and its retail and/or manufacturer customers.

64.     On information and belief, anyone with login credentials to the LiveRamp store can login and purchase consumer impressions based on the data and attributes offered by Circana and purportedly "***Powered by Label Insight,***" as shown below.



65.     Circana is aware and has at all times been aware that unauthorized disclosure and/or use of the Label Insight Trade Secret Information is prohibited by the Master Services Agreement and that the Label Insight Trade Secret Information was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret information and limit use of the trade secret information as prescribed by the Master Services Agreement and the law.

66.     Therefore, on information and belief, Circana is knowingly and willfully promoting and selling Label Insight Trade Secret Information in connection with the LABEL INSIGHT Mark without Label Insight's authorization and using and/or disclosing that Label Insight Trade Secret

Information to, at the very least, LiveRamp and its retail and/manufacturer customers without Label Insight's consent and in violation of the Master Services Agreement and the law.

67.     Use of the Label Insight Trade Secret Information will provide significant competitive benefits to Circana, including in its development of competing CPG data and analytic products and services and the commercialization of those products and services in direct competition with NielsenIQ.

68.     And use of the LABEL INSIGHT Mark in connection with those services improperly suggests to retailers and/or manufacturers that Label Insight and/or NielsenIQ is affiliated, connected, and/or associated with Circana's services, which it is not, and has not been for well over a year.

69.     Use of the LABEL INSIGHT Mark in connection with Circana's goods and services and through its advertising and promotion, is also likely to cause, and, on information and belief, already has caused, confusion, mistake, or deception among consumers as to the nature, characteristics, qualities or geographic origin of its goods, services, or commercial activities.

70.     Through this unlawful suggestion of affiliation, connection, and/or association, or misrepresentation of the nature, characteristics, qualities or geographic origin of its goods, services, or commercial activities, NielsenIQ's goodwill has been harmed, and continues to be harmed, through Circana's actions. Moreover, consumers continue to be harmed by the false association, affiliation, and connection created by the unauthorized use of the LABEL INSIGHT Mark. Consumers expecting to receive the same reliable data and insight they have come to expect from the Label Insight products and services, will instead purchase a product that has no affiliation with NielsenIQ and has none of the same guarantees and reliability of the Label Insight products. For example, as Circana's access to the Label Insight SaaS Platform was terminated as of June 30,

2023, the Label Insight Trade Secret Information offered to retailers and/or manufactures by Circana may no longer be accurate. If so, Circana's use of the LABEL INSIGHT Mark in connection with those inferior and/or inaccurate services will significantly harm the goodwill that has been established in the mark.

71.     Circana's aforementioned acts to misappropriate the Label Insight Trade Secret Information, infringe the LABEL INSIGHT Mark, and engage in unlawful competition was, and continues to be, on information and belief, intentional, knowing, willful, malicious, fraudulent and oppressive.

**V.     Severe and Irreparable Harmed Caused by Misappropriation of Label Insight Trade Secret Information, Infringement of the LABEL INSIGHT Mark, and Unlawful Competition.**

72.     Through Circana's willful violation of NielsenIQ's exclusive rights in the Label Insight Trade Secret Information and LABEL INSIGHT Mark, Circana has caused substantial harm to NielsenIQ, including in the State of Illinois where it is headquartered, and such harm will continue if Circana is allowed to continue violating NielsenIQ's exclusive rights.

73.     Most obviously, Circana's violations of NielsenIQ's rights in its trade secrets and trademark will result in clear monetary damages that include, at the very least, lost licensing fees, the stolen value of the millions of dollars Label Insight, Inc., and subsequently NielsenIQ, spent in developing and protecting the Label Insight Trade Secret Information and LABEL INSIGHT Mark, and any lost sales as a result of Circana's willful misconduct and unlawful competition.

74.     By misappropriating and unlawfully using the Label Insight Trade Secret Information, and using the LABEL INSIGHT Mark without NielsenIQ's authorization, Circana has unlawfully obtained the ability to compete directly with NielsenIQ and its Label Insight offering. For example, Circana would not have had the capability of collecting the same level of

data provided in the Label Insight Trade Secret Information through lawful means. Yet through their unlawful acts, further bolstered by their unlawful use of the LABEL INSIGHT Mark, Circana has been able to offer competitive services without having to invest the same amount of time and resources that Label Insight, Inc., and subsequently NielsenIQ, invested in independently developing its trade secret information and building the goodwill in the LABEL INSIGHT Mark.

75.     Circana's use of the LABEL INSIGHT Mark is also likely to mislead, deceive, and confuse the purchasing public and the trade. It is likely that consumers will mistakenly believe that NielsenIQ and/or the Label Insight product is connected, associated or in some way affiliated with Circana, when in fact no such connection, association or affiliation exists. Circana does not have a legitimate reason or good faith basis to use the LABEL INSIGHT Mark in connection with their competing CPG goods and services.

76.     As a result of the foregoing, Circana has significantly impacted NielsenIQ's revenues. Circana's unlawful use of the Label Insight Trade Secret Information and LABEL INSIGHT Mark has also harmed, and will continue to harm, NielsenIQ and consumers in ways that cannot be compensated by monetary damages. As a result, NielsenIQ is suffering, and will continue to suffer, significant and long-term irreparable harm—including harm to its customer goodwill, industry relationships, and hard-earned market share, as well as the potential loss of the secrecy of its confidential information and trade secrets.

77.     Essentially, NielsenIQ's stellar reputation and goodwill, as well as the confidentiality of its Label Insight Trade Secret Information, has been stolen and is now entirely at the mercy of Circana. As a result, NielsenIQ has been forced to bring this action to safeguard its valuable intellectual property rights and enforce the terms and conditions of the Master Services Agreement with Circana.

**Count I**
**Federal Trademark Infringement (15 U.S.C. § 1114)**

78.     NielsenIQ re-alleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully under this Count.

79.     Section 32 of the Lanham Act, 15 U.S.C. § 1114, precludes the use in commerce of any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or cause mistake, or to deceive consumers.

80.     NielsenIQ is the sole and exclusive owner of the trademark registration from the United States Patent and Trademark Office for L A B E L **I N S I G H T** (Reg. No. 5055429) in connection with *"[p]roviding product data collection and management services for use in food product label analysis and marketing; providing product data solutions and analytics, namely, analyzing and compiling collected business data for food product labeling; business data analysis, namely, providing product data for analysis for food product label marketing and sales"* (IC 035) (the "Registered LABEL INSIGHT Mark"). *See* Exhibit 1 (Reg. No. 5055429).

81.     The Registered LABEL INSIGHT Mark is a valid and subsisting trademark which is in full force and effect.  Pursuant to 15 U.S.C. § 1057 and 15 U.S.C. § 1115, the registration serves as prima facie evidence of the mark's validity and NielsenIQ's right to use such mark in connection with the registered goods and/or services.

82.     Without NielsenIQ's authorization or consent, Circana is publicly advertising, selling, offering for sale, and/or distributing CPG product/label data and analytic services, and related goods/services, in connection with the Registered LABEL INSIGHT Mark in interstate commerce and in direct competition with genuine NielsenIQ data and analytic services.

83.     Circana's unauthorized use of the Registered LABEL INSIGHT Mark and/or a colorable imitation of the Registered LABEL INSIGHT Mark, in connection with competing CPG product/label data and analytic services, and related goods/services, is likely to cause, and, on information and belief, already has caused, confusion, mistake, or deception among consumers as to the source, quality, affiliation, sponsorship or authenticity of the parties' goods and/or services—depriving NielsenIQ of the goodwill established in its Registered LABEL INSIGHT Mark.

84.     On information and belief, Circana deliberately adopted and/or is using the Registered LABEL INSIGHT Mark with a bad faith intent to cause consumer confusion and/or trade on the goodwill established by NielsenIQ

85.     As a direct and proximate result of Circana's conduct, as alleged herein, NielsenIQ has suffered and continues to suffer significant damages in an amount to be later proven and determined at trial.

86.     Circana's use of the Registered LABEL INSIGHT Mark in connection with competing CPG data and analytic services has also caused and, unless restrained and enjoined, will continue to cause consumer confusion and irreparable harm, damage and injury to NielsenIQ for which NielsenIQ has no adequate remedy at law.

87.     Circana's willful and continued use of the Registered LABEL INSIGHT Mark despite knowing that it was not authorized to use the Registered LABEL INSIGHT Mark makes this case an exceptional case for which an award of NielsenIQ's reasonable attorneys' fees and costs are warranted pursuant to 15 U.S.C. § 1117.

88.     NielsenIQ is therefore entitled, among other relief, injunctive relief and an award of actual damages, Circana's profits, enhanced damages and profits, reasonable attorneys' fees,

and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

## Count II
## Federal Unfair Competition (15 U.S.C. § 1125)

89.      NielsenIQ re-alleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully under this Count.

90.      Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), precludes use in commerce on or in connection with any goods or services any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of its goods, services or commercial activities by another person.

91.      Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), also precludes use in commerce on or in connection with any goods or services any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of its goods, services, or commercial activities.

92.      Through extensive and continuous use of the LABEL INSIGHT Mark since as early as 2015 and registration of  (Reg. No. 5055429) in 2016, NielsenIQ has established and owns trademark rights in its LABEL INSIGHT Mark.

93.      Without NielsenIQ's authorization or consent, Circana is publicly advertising, selling, offering for sale, and/or distributing CPG product/label data and analytic services, and

related goods/services, in connection with the LABEL INSIGHT Mark in interstate commerce and in direct competition with genuine NielsenIQ data and analytic services.

94.     Circana's unauthorized use of the LABEL INSIGHT Mark in connection with competing CPG data and analytic services, and related goods/services, is likely to cause, and, on information and belief, already has caused, confusion, mistake, or deception among consumers as to the source, quality, affiliation, sponsorship or authenticity of the parties' goods and/or services—depriving NielsenIQ of the goodwill established in its LABEL INSIGHT Mark.

95.     Circana's unauthorized use of the LABEL INSIGHT Mark in connection with competing CPG data and analytic services, and related goods/services, and through its advertising and promotion, is likely to cause, and, on information and belief, already has caused, confusion, mistake, or deception among consumers as to the nature, characteristics, qualities or geographic origin of its goods, services, or commercial activities.

96.     On information and belief, Circana deliberately adopted and/or is using the LABEL INSIGHT Mark with a bad faith intent to cause consumer confusion and/or trade on the goodwill established by NielsenIQ .

97.     As a direct and proximate result of Circana's conduct, as alleged herein, NielsenIQ has suffered and continues to suffer significant damages in an amount to be later proven and determined at trial.

98.     Circana's use of the LABEL INSIGHT Mark in connection with competing CPG product/label data and analytic services has caused and, unless restrained and enjoined, will continue to cause consumer confusion and irreparable harm, damage and injury to NielsenIQ for which NielsenIQ has no adequate remedy at law.

99.    Circana's willful and continued use of the LABEL INSIGHT Mark despite knowing that it was not authorized to use the LABEL INSIGHT MARK makes this case an exceptional case for which an award of NielsenIQ's reasonable attorneys' fees and costs are warranted pursuant to 15 U.S.C. § 1117.

100.    NielsenIQ is therefore entitled, among other relief, injunctive relief and an award of actual damages, Circana's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

**Count III**
**Common Law Trademark Infringement/Unfair Competition**

101.    NielsenIQ re-alleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully under this Count.

102.    Through extensive and continuous use of the LABEL INSIGHT Mark since as early as 2015, as well as registration of LABEL **INSIGHT** (Reg. No. 5055429) in 2016, NielsenIQ has established and owns trademark rights in its LABEL INSIGHT Mark.

103.    Circana's conduct complained of herein, including, without limitation, unauthorized use of the LABEL INSIGHT Mark in connection with competing CPG product/label data and analytic services, and related goods/services, constitute common law trademark infringement and unfair competition in violation of the laws of the State of Illinois.

104.    Upon information and belief, Circana deliberately adopted and/or is using the LABEL INSIGHT Mark with a bad faith intent to cause consumer confusion and/or trade on the goodwill established by NielsenIQ.

105.    Circana's unauthorized use of the LABEL INSIGHT Mark in connection with competing CPG data and analytic services, and related goods/services, is likely to cause, and, on

information and belief, already has caused, confusion, mistake, or deception among consumers as to the source, quality, affiliation, sponsorship or authenticity of the parties' goods and/or services—depriving NielsenIQ of the goodwill established in its LABEL INSIGHT Mark.

106.    Circana's unauthorized use of the LABEL INSIGHT Mark in connection with competing CPG data and analytic services, and related goods/services, and through its advertising and promotion, is likely to cause, and, on information and belief, already has caused, confusion, mistake, or deception among consumers as to the nature, characteristics, qualities or geographic origin of its goods, services, or commercial activities.

107.    As a direct and proximate result of Circana's conduct, as alleged herein, NielsenIQ has suffered and continues to suffer significant damages in an amount to be later proven and determined at trial.

108.    Circana's use of the LABEL INSIGHT Mark in connection with competing CPG product/label data and analytic services has also caused and, unless restrained and enjoined, will continue to cause consumer confusion and irreparable harm, damage and injury to NielsenIQ for which NielsenIQ has no adequate remedy at law.

109.    Upon information and belief, Circana has engaged in their unlawful conduct alleged herein intentionally, maliciously, fraudulently and oppressively, entitling NielsenIQ to punitive damages in an amount to be determined at trial.

110.    NielsenIQ is therefore entitled, among other relief, injunctive relief and an award of actual damages, Circana's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest.

**Count IV**
**Illinois Uniform Deceptive Trade Practices Act  (815 ILCS 510)**

111.    NielsenIQ re-alleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully under this Count.

112.    Section 510/2 of the Illinois Uniform Deceptive Trade Practices Act provides in relevant part:

> A person engages in a deceptive trade practice when, in the course of his or her business…the person:
>
> (1) passes off goods or services of those of another;
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
> (3) causes likelihood of confusion or of misunderstanding as to the affiliation, connection or association with or certification by another,…or
> (12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

815 ILCS 510/2.

113.    Circana's unauthorized use of the LABEL INSIGHT Mark in connection with competing CPG product/label data and analytic services, and related goods/services, as alleged herein, is likely to cause, and, on information and belief, has caused, confusion, mistake, or deception among consumers as to the source, quality, affiliation, sponsorship or authenticity of the parties' goods and/or services or the nature, characteristics, qualities or geographic origin of Circana's goods, services, or commercial activities—depriving NielsenIQ of the goodwill established in its LABEL INSIGHT Mark. These acts constitute unfair and deceptive trade practices in the course of Circana's business in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq*.

114.     On information and belief, Circana deliberately and willfully adopted and/or is using the LABEL INSIGHT Mark with a bad faith intent to cause consumer confusion and/or trade on the goodwill established by NielsenIQ since at least as early as 2015.

115.     Circana's use of the LABEL INSIGHT Mark in connection with competing CPG product/label data and analytic services, and related goods/services has caused and, unless restrained and enjoined, will continue to cause consumer confusion and irreparable harm, damage and injury to NielsenIQ for which NielsenIQ has no adequate remedy at law.

116.     NielsenIQ is therefore entitled, among other relief, injunctive relief and an award of reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest.

**Count V**
**Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*)**

117.     NielsenIQ re-alleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully under this Count.

118.     Section 505/2 of the Illinois Consumer Fraud and Deception Business Practices Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to…the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person in fact has been misled, deceived or damaged thereby.

815 ILCS 505/2.

119.     Circana's unauthorized use of the LABEL INSIGHT Mark and Label Insight Trade Secret Information in connection with competing CPG data and analytic services, and related goods/services, is likely to cause, and already has caused, confusion, mistake, or deception among consumers as to the source, quality, affiliation, sponsorship or authenticity of the parties' goods

and/or services or the nature, characteristics, qualities or geographic origin of Circana's goods, services, or commercial activities—depriving NielsenIQ of the goodwill established in the LABEL INSIGHT Mark and its rights in the Label Insight Trade Secret Information. These acts constitute unfair or deceptive trade practices in the course of Circana's business and cause a direct and indirect injury to consumers generally in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq*.

120. On information and belief, Circana deliberately adopted and/or is using the LABEL INSIGHT Mark and Label Insight Trade Secret Information with a bad faith intent to cause consumer confusion and/or trade on the goodwill established by NielsenIQ since at least as early as 2015.

121. As a direct and proximate result of Circana's conduct, as alleged herein, NielsenIQ has suffered and continues to suffer significant damages in an amount to be later proven and determined at trial.

122. Circana's use of the LABEL INSIGHT Mark in connection with competing CPG product/label data and analytic services, and related goods/services has caused and, unless restrained and enjoined, will continue to cause consumer confusion and irreparable harm, damage and injury to NielsenIQ for which NielsenIQ has no adequate remedy at law.

123. NielsenIQ is therefore entitled, among other relief, injunctive relief and an award of actual damages, Circana's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest.

**Count VI**
**Misappropriation of Trade Secrets Pursuant to the**
**Federal Defend Trade Secrets Act (18 U.S.C. § 1831 et seq.)**

124.    NielsenIQ re-alleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully under this Count.

125.    Under the Defend Trade Secrets Act ("DTSA"), the "owner of a trade secret that is misappropriated may bring a civil action…if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." *See* 18 U.S.C. § 1836(b)(1).

126.    The DTSA defines the term "trade secrets" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if…(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *See* 18 U.S.C. § 1839(3).

127.    NielsenIQ is the owner of the Label Insight Trade Secret Information, and such information constitutes trade secrets under the DTSA.

128.    As stated previously, NielsenIQ takes reasonable steps to protect and maintain the secrecy of the Label Insight Trade Secret Information, including, but not limited to, requiring its employees to enter into non-disclosure agreements that require its employees to keep the Label Insight Trade Secret Information confidential and restricting access to and/or use of the Label

Insight Trade Secret Information. On information and belief, Label Insight, Inc, prior to its acquisition in 2021, took similarly reasonable steps to protect the confidentiality and secrecy of the Label Insight Trade Secret Information and independent economic value derived therefrom.

129. The Label Insight Trade Secret Information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

130. The Label Insight Trade Secret Information is related to a product or service used in, sold, shipped, ordered, and/or intended for use in interstate commerce.

131. On information and belief, Circana has, through improper means, used and/or disclosed the Label Insight Trade Secret Information as part of its business in activities related to competition with NielsenIQ and in a manner that undermines NielsenIQ's business operations.

132. On information and belief, Circana specifically misappropriated the Label Insight Trade Secret Information in one or more of the following ways and as further described above:

    a. By acquiring the Label Insight Trade Secret Information through improper means;

    b. By disclosing and/or using the Label Insight Trade Secret Information without NielsenIQ's express or implied consent after using improper means to acquire knowledge of the Label Insight Trade Secret Information;

    c. By disclosing and/or using the Label Insight Trade Secret Information without NielsenIQ's express or implied consent while, at the time of the disclosure and/or use, knowing, or having reason to know, that knowledge of the Label Insight Trade Secret Information was acquired using improper means;

d.  By disclosing and/or using the Label Insight Trade Secret Information without NielsenIQ's express or implied consent while, at the time of the disclosure and/or use, knowing, or having reason to know, that knowledge of the Label Insight Trade Secret Information was acquired under circumstances giving rise to a duty to maintain the secrecy of the Label Insight Trade Secret Information or limit the use of the Label Insight Trade Secret Information;

e.  By disclosing and/or using the Label Insight Trade Secret Information without NielsenIQ's express or implied consent while, at the time of the disclosure and/or use, knowing, or having reason to know, that knowledge of the Label Insight Trade Secret Information was derived from or through a person who owed a duty to Label Insight to maintain the secrecy of the Label Insight Trade Secret Information or limit the use of the Label Insight Trade Secret Information; and/or

f.  By disclosing and/or using the Label Insight Trade Secret Information without NielsenIQ's express or implied consent while knowing or having reason to know the Label Insight Trade Secret Information was a trade secret and that knowledge of the Label Insight Trade Secret Information had been acquired by accident or mistake.

133.    On information and belief, Circana took such actions willfully, maliciously, and/or in reckless disregard for NielsenIQ's rights, in that Circana knew, or had reason to know, that they were not authorized to use and/or disclose the Label Insight Trade Secret Information after termination of the Master Services Agreement, especially in activities related to competition with NielsenIQ or in a manner that undermines NielsenIQ's business operations.

134.    As a direct and proximate result of Circana's misappropriation of the Label Insight Trade Secret Information, NielsenIQ has and will continue to suffer actual damages and/or Circana has been unjustly enriched, in an amount to be proven and determined at trial. In lieu of damages measured by any other methods, the damages caused by the misappropriation may also be measured by imposition of liability for a reasonable royalty for Circana's unauthorized disclosure and/or use of the Label Insight Trade Secret Information. *See* 18 U.S.C § 1836(b)(3)(B).

135.    As a result of Circana's misappropriation of the Label Insight Trade Secret Information, NielsenIQ has and will continue to suffer irreparable harm and is entitled to injunctive relief pursuant to 18 U.S.C § 1836(b)(3)(A) and an order requiring any other affirmative acts that the Court deems proper and necessary to protect the Label Insight Trade Secret Information.  If Circana's conduct is not enjoined, NielsenIQ will continue to suffer severe competitive harm, irreparable injury, and significant damages. Therefore, by operating in a highly competitive market, NielsenIQ will continue suffering irreparable harm absent injunctive relief.

136.    Pursuant to 18 U.S.C. § 1836(b)(3)(C), NielsenIQ is entitled to exemplary damages for Circana's willful and malicious misappropriation of Label Insight's Trade Secret Information.

137.    Pursuant to 18 U.S.C. § 1836(b)(3)(D), NielsenIQ is entitled to recovery of its attorneys' fees because of Circana's willful and malicious misappropriation of the Label Insight Trade Secret Information.

138.    NielsenIQ is therefore entitled, among other relief, injunctive relief and an award of actual damages, Circana's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest.

**Count VII**
**Misappropriation of Trade Secrets Pursuant to the**
**Illinois Trade Secrets Act (765 ILCS 1065/1 et seq.)**

139.    NielsenIQ re-alleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully under this Count.

140.    The Illinois Trade Secrets Act prohibits the misappropriation of trade secrets and defines the term "trade secrets" to include "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." *See* 765 Ill. Comp. Stat. 1065/2(d).

141.    Under the Illinois Trade Secrets Act, misappropriation means any of the following: "(1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without the express or implied consent by a person who: (A) Used improper means to acquire knowledge of the trade secret; (B) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was: (i) Derived from or through a person who had utilized improper means to acquire it; (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (4) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake. *See* 765 Ill. Comp. Stat. 1065/2(b).

142. NielsenIQ is the owner of the Label Insight Trade Secret Information, and such information constitutes trade secrets under the Illinois Trade Secrets Act.

143. As stated previously, NielsenIQ takes reasonable steps to protect and maintain the secrecy of the Label Insight Trade Secret Information, including, but not limited to, requiring its employees to enter into non-disclosure agreements that require its employees to keep the Label Insight Trade Secret Information confidential and restricting access to and/or use of the Label Insight Trade Secret Information. On information and belief, Label Insight, Inc, prior to its acquisition in 2021, took similarly reasonable steps to protect the confidentiality and secrecy of the Label Insight Trade Secret Information and independent economic value derived therefrom.

144. The Label Insight Trade Secret Information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

145. On information and belief, Circana has, through improper means, used and/or disclosed the Label Insight Trade Secret Information as part of its business in activities related to competition with NielsenIQ and in a manner that undermines NielsenIQ's business operations.

146. On information and belief, Circana specifically misappropriated the Label Insight Trade Secret Information in one or more of the following ways and as further described above:

    a. By acquiring the Label Insight Trade Secret Information through improper means;

    b. By disclosing and/or using the Label Insight Trade Secret Information without NielsenIQ's express or implied consent after using improper means to acquire knowledge of the Label Insight Trade Secret Information;

c. By disclosing and/or using the Label Insight Trade Secret Information without NielsenIQ's express or implied consent while, at the time of the disclosure and/or use, knowing, or having reason to know, that knowledge of the Label Insight Trade Secret Information was acquired using improper means;

d. By disclosing and/or using the Label Insight Trade Secret Information without NielsenIQ's express or implied consent while, at the time of the disclosure and/or use, knowing, or having reason to know, that knowledge of the Label Insight Trade Secret Information was acquired under circumstances giving rise to a duty to maintain the secrecy of the Label Insight Trade Secret Information or limit the use of the Label Insight Trade Secret Information;

e. By disclosing and/or using the Label Insight Trade Secret Information without NielsenIQ's express or implied consent while, at the time of the disclosure and/or use, knowing, or having reason to know, that knowledge of the Label Insight Trade Secret Information was derived from or through a person who owed a duty to Label Insight to maintain the secrecy of the Label Insight Trade Secret Information or limit the use of the Label Insight Trade Secret Information; and/or

f. By disclosing and/or using the Label Insight Trade Secret Information without NielsenIQ's express or implied consent while knowing or having reason to know the Label Insight Trade Secret Information was a trade secret and that knowledge of the Label Insight Trade Secret Information had been acquired by accident or mistake.

147. On information and belief, Circana took such actions willfully, maliciously, and/or in reckless disregard for NielsenIQ's rights, in that Circana knew, or had reason to know, that it was not authorized to use and/or disclose the Label Insight Trade Secret Information.

148. As a direct and proximate result of Circana's misappropriation of the Label Insight Trade Secret Information, NielsenIQ has and will continue to suffer actual damages and/or Circana has been unjustly enriched, in an amount to be determined at trial pursuant to 765 Ill. Comp. Stat. 1065/4. In lieu of damages measured by any other methods, the damages caused by the misappropriation may also be measured by imposition of liability for a reasonable royalty for Circana's unauthorized disclosure and/or use of the Label Insight Trade Secret Information.

149. As a result of Circana's misappropriation of the Label Insight Trade Secret Information, NielsenIQ has and will continue to suffer irreparable harm and is entitled to injunctive relief pursuant to 765 Ill. Comp. Stat. 1065/3 and an order requiring any other affirmative acts that the Court deems proper and necessary to protect the Label Insight Trade Secret Information. If Circana's conduct is not enjoined, NielsenIQ will continue to suffer severe competitive harm, irreparable injury, and significant damages. Therefore, by operating in a highly competitive market, NielsenIQ will continue suffering irreparable harm absent injunctive relief.

150. Pursuant to 765 Ill. Comp. Stat. 1065/4(b), NielsenIQ is entitled to exemplary damages for Circana's willful and malicious misappropriation of the Label Insight Trade Secret Information.

151. Pursuant to 765 Ill. Comp. Stat. 1065/5, NielsenIQ is entitled to recovery of its attorneys' fees because of Circana's willful and malicious misappropriation of the Label Insight Trade Secret Information.

152.     NielsenIQ is therefore entitled, among other relief, injunctive relief and an award of actual damages, Circana's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest.

**Count VIII**
**Breach of the Master Services Agreement**

153.     NielsenIQ re-alleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully under this Count.

154.     Circana, by and through its predecessor Information Resources, Inc., and Label Insight, Inc. entered into a valid and enforceable contract, with offer and acceptance, and supported by consideration and definite and certain terms, entitled the Master Services Agreement. A copy of the original Master Services Agreement, with accompanying Exhibit A and Appendix 1, is attached as Exhibit 3 and incorporated by reference herein.

155.     Label Insight Inc., along with all rights and assets, including, without limitation those rights under the Master Services Agreement, were acquired by NielsenIQ in 2021.

156.     NielsenIQ, and previously Label Insight, Inc., on information and belief, fully performed all the conditions, covenants, and obligations required on its part under the Master Services Agreement.

157.     Under the Master Services Agreement and its subsequent amendments, Circana agreed to several obligations, including, without limitation, those identified below. For example, upon termination of the Master Services Agreement, Circana was contractually obligated to, at the very least, cease all use of the Label Insight Trade Secret Information and delete all Label Insight Trade Secret Information in its possession. *See* Exhibit 3 at ¶ 2.

158.     Circana also acknowledged through the Master Services Agreement that the Label Insight Trade Secret Information provided under the Master Services Agreement is the confidential

information of Label Insight, Inc., and subsequently NielsenIQ, and further agreed that it shall not disclose or cause to be disclosed any Label Insight Trade Secret Information except to those who require access to such information to perform under the Master Services Agreement and to protect the Label Insight Trade Secret Information by using the same degree of care, but no less than a reasonable degree of care, that Circana uses to protect its own confidential information of a like nature to prevent its unauthorized use, dissemination or publication to any unauthorized third parties. *See* Exhibit 3 at ¶ 5.

159. Circana was further prohibited from (and required to ensure that its customers did not), unless expressly allowed under the Master Services Agreement the following acts: (i) copy, modify or create derivative works of the Label Insight SaaS Platform and/or the Label Insight Materials; (ii) rent, lease, lend, sell, sublicense, assign, distribute, publish, transfer or otherwise make available the Label Insight SaaS Platform and/or any of the Label Insight Materials to any person or entity; (iii) reverse engineer, disassemble, decompile, decode, adapt or otherwise attempt to derive or gain access to the source code associated with the Label Insight SaaS Platform, in whole or in part; (iv) damage, destroy, disrupt, disable, impair, interfere with or otherwise impede or harm in any manner the Label Insight SaaS Platform, in whole or in part; (v) access or use the Label Insight SaaS Platform and/or the Label Insight Materials in any manner or for any purpose that infringes, misappropriates or otherwise violates any Intellectual Property Right or other right of any third part, or that violates any applicable law; and/or (vi) access or use the Label Insight SaaS Platform and/or the Label Insight Materials for purposes of competitive analysis of the Label Insight SaaS Platform or the Label Insight Materials. *See* Exhibit 3 at Statement of Work ¶ 5.2.

160.     The Master Services Agreement was terminated as of June 30, 2023 through the December 29, 2022 notice of "Termination of the Master Services Agreement" served on Circana as shown in Exhibit 4 ("Termination Notice").

161.     Circana materially breached the Master Services Agreement, including, without limitation, the specific contractual obligations identified above, as well as the implied duty of good faith and fair dealing, by at the very least, misappropriating the Label Insight Trade Secret Information, using the Label Insight Trade Secret Information beyond the scope permitted in the Master Services Agreement and in competition with NielsenIQ, and by failing to delete all Label Insight Trade Secret Information in its possession after termination of the Master Services Agreement in 2023. On information and belief, these breaches were taken fraudulently and willfully, and misappropriate NielsenIQ's intellectual property rights, including, without limitation, misappropriation of the Label Insight Trade Secret Information.

162.     As a direct and proximate result of Circana's breach of the Master Services Agreement, NielsenIQ has sustained and will continue to sustain financial losses and/or Circana has been unjustly enriched, in an amount to be determined and prove at trial. At a minimum, NielsenIQ has lost the commercial advantage of maintaining the confidentiality of the Label Insight Trade Secret Information, lost profits as a result of Circana's unlawful use of the Label Insight Trade Secret Information, and/or lost royalties from Circana's use of the Label Insight Trade Secret Information.

163.     As a direct and proximate result of Circana's breach of the Master Services Agreement, NielsenIQ has and will continue to suffer irreparable harm.  If Circana's conduct is not enjoined, NielsenIQ will continue to suffer severe competitive harm, irreparable injury, and significant damages.

## JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure, NielsenIQ hereby demands a trial by jury on all claims and issue so triable.

## PRAYER FOR RELIEF

WHEREFORE, for violation of the foregoing counts, NielsenIQ respectfully prays for the following relief:

A.  Judgment in favor of NielsenIQ and finding Circana liable on Counts I-VIII;

B.  That this Court enter a preliminary injunction, thereafter to be made permanent, against Circana and its respective affiliates, subsidiaries, agents, representative, licenses, successors, and assigns – and all those acting for them, on their behalf, or in concert with them – that, among other things: (1) compels Circana to fully abide by the terms of the Master Services Agreement; (2) compels Circana to return to NielsenIQ all records and information reflecting Label Insight Trade Secret Information; (3) orders Circana to immediately cease all use of Label Insight Trade Secret Information, including, without limitation, by removing all Label Insight Trade Secret Information, including as all derivative data, information, analysis, or materials of any kind that include, are based on, or utilize all or part of Label Insight Trade Secret Information, from its databases, algorithms, coding, software or systems; (4) prohibits Circana from directly or indirectly using Label Insight Trade Secret Information; (5) prohibits Circana from directly or indirectly disclosing Label Insight Trade Secret Information; (6) orders Circana to identify all Label Insight Trade Secret Information that has been disclosed by Circana and the names of any individual or entity to whom such disclosure was made; (7) orders Circana to cease all use of the LABEL INSIGHT Mark, or any confusingly similar mark thereto, in connection with CPG data and analytic services, or any related goods and/or services;

C. That this Court enter an Order requiring Circana to preserve all documents, electronically stored information, and other information relevant to the factual allegations and claims contained in this Complaint, including any communications, text messages, or emails on personal electronic devices, such as cellular telephones, or stored in email or other cloud storage accounts;

D. That this Court enter an Order requiring Circana to stipulate and agree with counsel for NielsenIQ on a non-party forensic vendor to perform a forensic review of Circana's computer systems to confirm the deletion and cessation of all use of Label Insight Trade Secret Information;

E. That this Court award NielsenIQ actual and compensatory damages in an amount to be determined at trial, or in the alternative the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the Circana's unauthorized disclosure or use of Label Insight Trade Secret Information and unauthorized use of the LABEL INSIGHT Mark;

F. That this Court also award NielsenIQ disgorgement of Circana's revenues and/or gains wrongfully acquired, exemplary or punitive damages, its reasonable attorney's fees and costs, and pre-judgment and post-judgment interest;

G. That this Court award such further relief to which NielsenIQ may be entitled under the circumstances.

Dated:   October 24, 2024

By: */s/ Justin Powers Mulligan*
Michael A. Parks, Il. Bar No. 6217230
Brendan M. Bement, Il. Bar No. 6338045
THOMPSON COBURN LLP
55 E. Monroe Street, 37th Floor
Chicago, Illinois 60603
P: (312) 346-7500
F: (312) 580-2201
mparks@thompsoncoburn.com
bbement@thompsoncoburn.com

Matthew A. Braunel, Il. Bar No. 6276394
Justin P. Mulligan, Il. Bar No. 6319388
THOMPSON COBURN LLP

One U.S. Bank Plaza
Saint Louis, Missouri 63101
P: (314) 552-6000
F: (314) 552-7000
mbraunel@thompsoncoburn.com
jmulligan@thompsoncoburn.com

John Thorne, Il. Bar No. 6181458
James M. Webster (*pro hac vice forthcoming*)
Joseph S. Hall (*pro hac vice forthcoming*)
KELLOGG HANSEN TODD FIGEL &
FREDERICK PLLC
1615 M Street, NW, Suite 400
Washington, DC  20036
P: (202) 326-7900
F: (202) 326-7999
jthorne@kellogghansen.com
jwebster@kellogghansen.com
jhall@kellogghansen.com

*Attorneys for Nielsen Consumer LLC*